UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
STEPHEN FOSTER,

                   Plaintiff,

    -against-

FRANK NANNA, Individually and as Chief
of Police of the Village of Elmsford, and
the VILLAGE OF ELMSFORD,

                  Defendants.
-----------------------------------------------------------X

U.S. DISTRICT COURT
2004 MAR 30 A 11: 52
04 CIV. S.D. OF N.Y. W.P.

**COMPLAINT**

**ECF CASE**

**JURY TRIAL DEMANDED**

**04 CIV. 2482**

**BRIEANT**

    Plaintiff, STEPHEN FOSTER, by his attorney, Thomas J. Troetti, Esq., as and for his Complaint states as follows:

### NATURE OF ACTION

    1. This action is brought to redress deprivations committed by the Defendants, acting in concert and under color of New York State law, of Plaintiff's rights, privileges and immunities as guaranteed to him by the First and Fourteenth Amendments of the United States Constitution.

### JURISDICTION

    2. This court's jurisdiction is invoked pursuant to 28 U.S.C. section 1331 and section 1343(a)(3).

### PARTIES

    3. The Plaintiff, STEPHEN FOSTER, is a citizen of the United States, a domiciliary of the State of New York and a resident of the Town of Yorktown. On April 4, 1988 he was appointed as a police officer with the Village of Elmsford where he has been continuously employed. He was promoted to Detective on September

1

18, 1995. In such position of employment the Plaintiff has permanent tenured civil service status as a detective, and as a result, a property interest in his position with respect to which he could not lawfully be subjected to any deprivation without first being accorded a due process hearing.

    4. The Defendant, VILLAGE OF ELMSFORD, (hereinafter the "Village") is a political subdivision of the State of New York and a municipal corporation duly existing pursuant to the laws of the State of New York.

    5. The Defendant, FRANK NANNA, (hereinafter "Nanna") who is sued in his individual and official capacities, at all times relevant to this complaint was the Chief of Police of the Village of Elmsford and as such had authority, inter alia, to issue departmental orders, assign and reassign police personnel and otherwise had plenary authority for the management and administration of the Police Department. The Police Chief was, and is, a policy maker of the Village.

    6. At all times relevant, the Plaintiff, STEPHEN FOSTER, was and is a member of the Elmsford Police Association (hereinafter "PBA") which was and is the labor union representing all police officers employed by the Village. For a period of nine (9) years, until 2003, the Plaintiff was the Vice-President of the PBA. From January 1, 2003 to December 31, 2003 Detective Foster was a Trustee of the PBA. On January 1, 2004 Detective Foster became Vice-President of the PBA, which executive position he currently holds.

    7. At all times mentioned, there were eighteen (18) authorized and budged positions for police officer within the Village, which was increased to nineteen (19) in June, 2003.

8. In 2002, one of the sergeants of the Police Department retired, and in 2003, two (2) additional police officers left the employ of the Village to accept employment as a police officer with other police departments.

9. Overall department staffing was reduced further when in 2002 another police officer sustained injuries which incapacitated him from performing his duties.

10. The Defendants have failed to fill the police officer vacancies.

11. In mid-2003 the Plaintiff, and other executive board members of the PBA, began to express to Police Chief Nanna what were safety concerns created by reason of the departmental personnel shortages.

12. When none of those safety concerns were addressed by the Police Chief, the Plaintiff, and those other executive board members, appeared before the Village Board of Trustees on December 15, 2003.

13. At said meeting with the Mayor and the Trustees of the Village Board, the Plaintiff echoed his earlier expressed safety concerns caused by the insufficient number of police officers deployed within the Police Department.

14. Two (2) days after the meeting, Police Chief Nanna distributed an interoffice memorandum to the Mayor, and the other Trustees of the Village Board, which proposed various solutions to the departmental staffing shortage.

15. In the interoffice memorandum dated January 17, 2004, Police Chief Nanna concluded, inter alia, that the reassignment of a detective to ease a personnel shortage in patrol "would [not] be in the best interest of the Village or the Department".

3

20. Pursuant to the directive of Police Chief Nanna, without having been afforded a due process hearing the Plaintiff was, in fact, removed from the Detective Unit, effective February 16, 2004.

21. The Plaintiff's removal from the Detective Unit resulted in a change of his tour of duty from working alternating weeks of 8:00 a.m. to 4:00 p.m. and 3:00 p.m. to 11:00 p.m., with Sundays off, to a rotational tour of duty of "around the clock". The Plaintiff's removal from the Detective Unit also resulted in a substantial loss of compensation, including that for standby pay, guaranteed to him as a member of the Detective Unit pursuant to the collective bargaining agreement between PBA and the Village.

22. As a proximate result of the Defendant's willful, deliberate and/or reckless conduct, the Plaintiff was deprived of compensation from his employment with the Village; was punished for having engaged in constitutionally protected speech and associational rights; selectively punished for having exercised his constitutional rights; damaged financially; publicly embarrassed and degraded; humiliated; and subjected to upset and anxiety.

## AS AND FOR A FIRST CLAIM

23. Repeats and realleges as if fully set forth herein the allegations of those paragraphs designated "1" to "22" inclusive.

24. Under the premises, the Defendants' conduct violated the Plaintiff's right to free speech and to petition the government as guaranteed to him by reason of the First Amendment to the United States Constitution, 42 U.S.C section 1983, 1985.

## AS AND FOR A SECOND CLAIM

25. Repeats and realleges as if fully set forth herein the allegations of those paragraphs designated "1" to "24" inclusive.

26. Under the premises, the Defendants' conduct violated the Plaintiff's right of association as guaranteed him by reason of the First Amendment to the United States Constitution, 42 U.S.C. section 1983, 1985.

## AS AND FOR A THIRD CLAIM

27. Repeats and realleges as if fully set forth herein the allegations of those paragraphs designated "1" to "25" inclusive.

28. Under the premises, the Defendants' removal of the Plaintiff from the Detective Unit without a hearing violated his right to due process as guaranteed him by reason of the Fourteenth Amendment to the United States Constitution 42 U.S.C. section 1983, 1985

## AS AND FOR A FOURTH CLAIM

29. Repeats and realleges as if fully set forth herein the allegations of those paragraphs designated "1" to "28" inclusive.

30. Under the premises the Defendants denied Plaintif equal protection as guaranteed him by reason of the Fourteenth Amendment to the United States Constitution.

WHEREFORE, judgment is demanded:

    a. Awarding such compensatory damages against the Defendants as the jury may determine, and as against the Defendant, Nanna, such punitive damages as the jury in its discretion may impose.

    b. Restoring the Plaintiff to the Detective Unit.

    c. Awarding reasonable attorney's fees, and the costs and disbursements of this action pursuant to 42 U.S.C. section 1988.

    d. Granting such other and further relief as to the Court seems just and proper.

DATED: Elmsford, New York
March 30, 2004

*[signature]*

THOMAS J. TROETTI, ESQ.(7481)
Attorney for the Plaintiff
Office & P.O. Address
45 Knollwood Road
Elmsford, New York 10523
(914) 345-8140